UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES TITSCHLER, | ) | |
| | ) | |
| Plaintiff, | ) | 1:15-cv-0664 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | Magistrate Judge Susan E. Cox |
| LTF CLUB OPERATIONS COMPANY, | ) | |
| Inc., d/b/a LIFTETIME FITNESS | ) | |
| | ) | |

## ORDER

For the reasons more fully discussed below, Defendant's Motion for Summary Judgment [40] is GRANTED. Judgment is entered in favor of Defendant LTF Club Operations Company d/b/a Lifetime Fitness ("Defendant") and against Plaintiff James Titschler ("Plaintiff").

**I.   Background**

Defendant operates a fitness club, and Plaintiff was a member of that club. (Dkt. 46 at ¶¶ 5, 9.) Defendants have produced a Membership Application and Agreement (the "Membership Agreement"), which contains two provisions relevant to the instant suit (together, the "Exculpatory Clauses"). First, is the section entitled "Assumption of Risk, Release and Indemnity," which reads in relevant part:

> The use of the facilities at the Club naturally involves the risk of injury, whether the undersigned or someone else causes it. As such, the undersigned agrees that he or she understands and voluntarily accepts this risk and agrees that LIFE TIME FITNESS will not be liable for any injury, including and without limitation, personal, bodily or mental injury, economic loss or any damage to the undersigned, the undersigned's spouse, guest or relatives resulting from the negligence or other acts of LIFETIME FITNESS or anyone else using the facilities.

1

(Dkt. 42-3.)

The second section of the Membership Agreement involved in this case is the "Waiver of Liability" clause. This portion of the Membership Agreement states:

> The undersigned understands that although the Clubs (sic) facilities, equipment, services and programs are designed to provide a safe level of beneficial exercise and enjoyment, there is an inherent risk that use of such facilities, equipment, services and programs may result in injury. Therefore, the undersigned agrees to specifically assume all risk while using any of the Clubs (sic) facilities, equipment, services or programs and hereby waives any and all claims or actions which may arise against LIFE TIME FITNESS or its owners and employees as a result of such injuries. The risks include, but are not limited to: 1) Injuries arising from my use of any exercise equipment, machines and/or tanning booths . . . ."

(Dkt. 42-3.)

The Membership Agreement shows that the "Activation Date" is December 29, 2000. (Dkt. 42-3 at 1.) The last page of the Membership Agreement contains a blank page with Plaintiff's signature, and bears the date December 29, 2000. (Dkt. 42-3 at 3; Dkt. 42-4 at 12:8-10.) Plaintiff testified at his deposition that he did not remember the exact date he became a member, but that his membership with Defendant had been continuous since he first joined Defendant's fitness club. However, the Plaintiff testified at his deposition that he did not remember reading the Membership Agreement, did not remember of the title of the document he signed, did not recall how many pages it had, and did not know that the Membership Agreement contained the Exculpatory Clauses recited above. (Dkt. 42-4 at 128:24-131:11.)

Plaintiff alleges that he was "using a specific piece of equipment at the defendant's physical fitness facilities" "as part of his physical fitness gym membership," when "the equipment's stopping mechanism did not engage," causing Plaintiff to suffer injuries. (Cmplt. at ¶¶ 5-6.) Plaintiff further alleges that Defendant failed to properly maintain its exercise

2

equipment, failed to properly inspect and repair the equipment, and failed to warn its members that the equipment was not in working order. (Cmplt. at ¶ 12.) As a result of Plaintiff's accident, he suffered a double hernia, which required surgical intervention. (Dkt. 42-4 at 107:23-108:7.)

Plaintiff filed the instant action in the Circuit Court of McHenry County, alleging negligence against the Defendant. (Dkt. 42-1, Ex. 1.) The case was then removed to federal court based on diversity of citizenship; Plaintiff is a citizen of Illinois and Defendant is a citizen of Minnesota. (Dkt. 42-1 at ¶ 7.) Defendant filed in the instant motion for summary judgment, arguing that the Exculpatory Clauses bar Plaintiff's claims for negligence. That motion is fully briefed and ripe for disposition by this Court.

**II. Discussion**

**A. Summary Judgment Standard**

For purposes of summary judgment, the Court will view all facts and draw all inferences in the light most favorable to the nonmoving party. *Smith v. Fusion Med. Spa*, *S.C.*, 836 F. Supp. 2d 773, 776 (N.D. Ill. 2011). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Lalowski v. City of Des Plaines*, 789 F.3d 784, 787 (7th Cir. 2015) (quoting Fed.R.Civ.P. 56(a)).

**B. The Exculpatory Clauses Bar Plaintiff's Claims.**

In this case, both parties agree that the substantive law of Illinois applies to determine the validity of the Exculpatory Clauses. Illinois courts allow parties to contract away their own negligence through the use of exculpatory clauses. *Cox v. U.S. Fitness, LLC*, 2 N.E.3d 1211, 1215 (Ill. App. Ct. 2013). Such clauses are valid and enforceable unless: 1) there is a substantial disparity in the bargaining power of the parties, 2) it would violate public policy to uphold the

clause, or 3) "there is something in the social relationship between the two parties that would militate against upholding the clause." *Garrison v. Combined Fitness Center, Ltd.*, 559 N.E.2d 187, 190 (Ill. App. Ct. 1990). However, such clauses are generally disfavored and strictly construed against the party they benefit. *Cox*, 2 N.E.3d at 1215. Therefore, as the court in *Garrison* explained:

> [A]n exculpatory clause, to be valid and enforceable, should contain clear, explicit, and unequivocal language referencing the type of activities, circumstances, or situations that it encompasses and for which the plaintiff agrees to relieve the defendant from a duty of care. In this way the plaintiff will be put on notice of the range of dangers for which he assumes the risks by exercising a greater degree of caution. The precise occurrence which results in the injury need not have been contemplated by the parties at the time the contract was entered into. It should only appear that the injury falls within the scope of possible dangers ordinarily accompanying the activity and, thus, reasonably contemplated by the plaintiff.

*Garrison*, 559 N.E.2d at 190 (internal citations omitted). "The foreseeability of a specific danger defines the scope" of the exculpatory clause, and the relevant inquiry is whether the Plaintiff knew or should have known the accident was a risk that was encompassed by his release." *Cox*, 2 N.E.3d at 1216.

The Defendant moves for summary judgment, arguing that the Exculpatory Clauses in the Membership Agreement bar Plaintiff's claim. The Plaintiff does not argue that the Exculpatory Clauses violate public policy, are the result of a substantial disparity in the bargaining positions of the parties, or that anything in the relationship between the two parties "militates" against upholding the clauses.[1] Instead, Plaintiff argues that the Exculpatory Clauses

---

[1] Presumably, the Plaintiff did not make these arguments because they have been previously rejected by Illinois courts. *See, e.g., Owen v. Vic Tanny's Enterprises*, 199 N.E.2d 280, 282 (Ill. App. Ct. 1964) ("The scarcity of facilities for gymnastic and reducing activities hardly creates such a disparity of bargaining power that plaintiff is forced to accept such terms without alternatives. If the public interest is involved, it is for the legislature to make such pronouncements. Absent appropriate legislative action, we must hold that the instant exculpatory clause barred

4

are not applicable because: 1) "at no time was there any express or implied agreement to exculpate the Defendant from risks arising from its own direct negligence for defective or ill-maintained equipment;" 2) the clause was "fatally vague and enforceable;" and 3) there was no "meeting of the minds as to the contents of the exculpatory agreement" because Plaintiff had no knowledge that the Membership Agreement contained the Exculpatory Clauses. (Dkt. 45.)

Regarding the first argument, the Membership Agreement clearly states that the Plaintiff "agrees to specifically assume all risk while using any of the Clubs (sic) facilities, **equipment**, services or programs and hereby waives any and all claims or actions which may arise against" the Defendant, and that Plaintiff agrees that the Defendant "will not be liable for any injury . . . **resulting from the negligence or other acts of [Defendant]** or anyone else using the facilities." (Dkt. 42-3) (emphasis added). Plaintiff cites no legal authority that suggests the Court should not read this language any differently than its plain meaning and the Court has found none. Despite Plaintiff's conclusory statements to the contrary, this language constitutes a clear and "express . . . agreement to exculpate Defendant from the risks arising from its own direct negligence for defective or ill-maintained equipment." (*See* Dkt. 45.) The Court, therefore, rejects the Plaintiff's first argument.

Plaintiff's second argument is also unavailing. Although the Plaintiff uses different terms (*i.e.*, "vague"), the Plaintiff appears to be arguing that the Exculpatory Clauses are not enforceable because Plaintiff's injury did not "fall[] within the scope of possible dangers ordinarily accompanying the activity and, thus, [was not] reasonably contemplated by the plaintiff." In other words, Plaintiff is arguing that his particular injury was not foreseeable. *See Garrison*, 559 N.E.2d at 190. But courts in Illinois regularly uphold exculpatory clauses like the

---

plaintiff's suit, and the court erred in not directing a verdict for the defendant and in denying defendant's motion for a judgment notwithstanding the verdict").

one at bar where the plaintiff is injured while using fitness equipment at a gymnasium. *See Cox*, 2 N.E.3d at 1216-1217 (wrist injury caused when risers collapsed during jumping exercise barred by exculpatory clause stating that plaintiff "assume[d] all risks associated with . . . equipment"); *Garrison*, 559 N.E.2d at 190-191 (crushed trachea caused when bench press fell onto plaintiff's neck barred by exculpatory clause); *Owen v. Vic Tanny's Enterprises*, 199 N.E.2d 280, 281 (Ill. App. Ct. 1964) (wrist injury suffered during slip and fall at fitness center's pool barred by exculpatory clause stating that plaintiff released defendant from all claims "arising out of the Member's use or intended use of the said gymnasium or the facilities and equipment thereof"); *Kubisen v. Chicago Health Clubs*, 388 N.E.2d 44, 46-47 (Ill. Ap. Ct. 1979) (injuries caused by fall in steam room of athletic club barred by exculpatory clause stating that defendant was not liable "for any damages arising from personal injuries sustained by the Member or his guest . . . as a result of their using the facilities and the equipment therein"); *see also*, *Hussein v. L.A. Fitness Int'l, LLC*, 987 N.E.2d 460 (Ill. App. Ct. 2013) (Illinois appellate court upholding similar exculpatory clause, applying Minnesota law). Having reviewed the overwhelming body of case law in Illinois, the Court finds that, as a matter of law, the injury suffered by the Plaintiff – *i.e.*, a double hernia suffered while using a piece of exercise equipment – is the type of risk that Plaintiff knew, or should have known, was encompassed by the release in the Membership Agreement– *i.e.*, the risk associated with using any of the Defendant's "facilities, equipment, services or programs."

Moreover, the Illinois cases that Plaintiff cites in support of his position are easily distinguishable from the facts in this case.[2] The court in *Calarco v. YMCA of Greater Metro.*

---

[2] The New York state court cases cited by Plaintiff in his brief in opposition are also readily distinguishable from the facts in this case, in addition to being of limited precedential value as they are New York cases that do not analyze Illinois law. None of those cases dealt with exculpatory clauses in fitness center contracts. Given the plethora of

6

*Chicago*, 501 N.E.2d 268 (Ill. App. Ct. 1986), held that the exculpatory clause, which covered "[p]articipation in any of the activities of the YMCA," was too vague to bar plaintiff's claims for injuries sustained while helping another member use a weight lifting machine. 501 N.E.2d at 272. However, the court in that case specifically discussed much of the case law cited above, and drew a clear distinction between those cases and the form that was at issue in *Calarco*. *Id.* The court in *Calarco* diverged from the case law upholding exculpatory clauses in fitness center contracts because the form in *Calarco* did "not contain a clear and adequate description of covered activities, such as 'use of the said gymnasium or the facilities and equipment thereof,' to clearly indicate that injuries resulting from negligence in maintaining the facilities or equipment would be covered by the release." *Id.* In the case at bar, the Membership Agreement does contain the type of language that the *Calarco* court specifically pointed to as a valid and enforceable exculpatory clause for injuries suffered while using fitness equipment. As such, the holding in that case is not applicable to the language of the clause currently before the Court. Moreover, it appears that *Calarco* might very well have been decided differently had the specific language in the Membership Agreement in this case been in front of that court.

Similarly, the facts of *Larsen v. Vic Tanny Int'l*, 474 N.E.2d 729 (Ill. App. Ct. 1984), are equally distinguishable from the case at bar. The plaintiff in *Larsen* alleged that he had been injured when a combination of chemicals used at the defendant fitness center had caused him to inhale hydrochloric acid vapors. *Id.* at 730-31. The court held that there was a genuine issue of material of fact regarding whether the plaintiff had suffered the type of injury that was reasonably encompassed by the exculpatory clause. An injury suffered when a piece of exercise equipment malfunctions – as occurred in this case – is significantly different the hydrochloric

---

Illinois case law with very similar facts to the case at bar, the Court does not believe that those cases are useful in deciding the instant motion.

acid vapor inhalation in *Larsen*, and this Court does not believe that the facts in that case are applicable to the facts currently before this Court. It is foreseeable that a person might suffer an injury while using exercise equipment; this is precisely why the use of "equipment" is expressly listed is most exculpatory clauses drafted by fitness centers, including the one in this case. On the other hand, it is not reasonable to expect that a person will be exposed to a dangerous mixture of chemicals during their workout, which explains the court's holding in *Larsen*. As noted above, personal injury suffered while using fitness equipment is precisely the type of injury that Illinois court regularly hold is barred by exculpatory clauses that specifically reference "equipment" or "facilities." *See, e.g., Cox*, 2 N.E.3d at 1216-1217. Therefore, the exculpatory clause is applicable to this injury and bars the Plaintiff's claim.

Furthermore, the Plaintiff's argument that there was no "meeting of the minds as to the contents of the exculpatory agreement" because Plaintiff was unaware of the exculpatory clause when he signed the Membership Agreement is also rejected. Absent fraudulent inducement or a material misrepresentation, the failure to read a contract will not prevent a party from being bound by its terms. *See Hawkins v. Capital Fitness, Inc.*, 29 N.E.2d 442, 446 (Ill. App. Ct. 2015). Plaintiff in this case has not alleged that he was fraudulently induced to sign the Membership Agreement, or that Defendant did anything to prevent him from reading the Membership Agreement before signing it; the court in *Hawkins* summarily rejected a similar argument when a plaintiff attempted to evade the coverage of an exculpatory clause that he failed to read. *Id.* Simply put, Plaintiff's failure to read the Membership Agreement does nothing to affect the validity or enforceability of the exculpatory clauses in that agreement, and his argument is rejected.[3]

---

[3] Although not argued in Plaintiff's brief in opposition to the instant motion, the Plaintiff's Response to Defendant's Statement of Facts in Support of Summary Judgment appears to claim that there is a genuine issue of material fact

8

Finally, Plaintiff argues that whether or not he knew he was signing the exculpatory clause is an issue of fact that must be decided by the jury. (Dkt. 45 at 8.) The cases cited by Plaintiff do not support that contention. *Kursturin v. Chicago & A.R. Co.*, 122 N.E.2d 512, 517 (Ill. 1919), concerned a release that was signed by a Croatian immigrant who could not read or write English, was not presented a copy of the release in Croatian or an interpreter, had been in the hospital for fourteen weeks when he signed, and the claims agent misrepresented what the plaintiff was signing. Plaintiff in this suit does not argue that he was incapable of understanding the Exculpatory Clauses, or that anyone from the Defendant misrepresented the substance of those clauses. Similarly, in *Johnson v. Elgin, J&E Ry. Co.*, 87 N.E.2d 567, 572 (Ill. App. Ct. 1948), "there [was] evidence that [the plaintiff] was told at the time he signed the release that the paper he signed, which later proved to be a release, was for the purpose of getting him another job." Here, Plaintiff has not claimed that the Defendant misrepresented the nature of the Membership Agreement or the Exculpatory Clauses. Additionally, as discussed above, lack of knowledge does not prevent a party from being bound by the terms of a contract, where – as here – that party was given an opportunity to read the contract and there is no evidence of fraud, deception, or misrepresentation. Thus, even assuming there is a question of fact regarding Plaintiff's knowledge, that question of fact is not material to this Court's ruling, as a matter of

---

regarding whether Plaintiff ever received or signed the Membership Agreement at issue in this case, stating that he admits signing "a document, but denies that at the time he signed such document it was known or called a Member Agreement and denies such document – to his knowledge – contained any exculpatory language." (Dkt. 46 at ¶¶ 10-11.) "A genuine dispute of material fact exists only when the evidence could support a reasonable jury's verdict for the non-moving party." *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 650 (7th Cir. 2011) (citing *Spivey v. Adaptive Mktg., LLC*, 622 F.3d 816, 822 (7th Cir. 2010)). Here, the Plaintiff admits that the signature on the last page of the Membership Agreement is his, does not deny that the date on that page matches the Activation Date listed on the Membership Agreement, admits that he has continuously been a member of the Defendant's fitness club since he first signed up, and admits that he signed a document of some sort when he became a member of Defendant's fitness club, but does not remember what the document was called and does not recall whether he read that document. This Court does not believe that a reasonable jury could review these facts and come to any conclusion other than that the Membership Agreement in this case was presented to Plaintiff at the time he became a member of Defendant's fitness club, and that he chose to sign it without reading it first. As such, there is no genuine issue of material fact as to this issue, and the Court rejects that argument.

law. Therefore, this is not an issue of fact that must be presented to a jury, and this Court rejects Plaintiff's argument.

## CONCLUSION

For the reasons more fully discussed above, Defendant's Motion for Summary Judgment [40] is GRANTED. Judgment is entered in favor of Defendant and against Plaintiff.

**ENTERED:**

**DATED:** April 22, 2016

Susan E. Cox

United States Magistrate Judge